## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARL SMITH, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| vs. | : | |
| | : | NO. 15-6516 |
| CITY OF PHILADELPHIA, | : | |
| DEPARTMENT OF LICENSES | : | |
| AND INSPECTIONS | : | |
| Defendant. | : | |

## ORDER

AND NOW, this _____ day of _____, 2017, upon consideration of the City of Philadelphia's Motion for Summary Judgment and the Plaintiff's Response thereto, it is hereby **ORDERED** and **DECREED** that Defendant's Motion is **GRANTED** and judgment is entered in favor of the Defendant on all counts of the Complaint.

BY THE COURT:

_____

Gerald A. McHugh, J.

1.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARL SMITH,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| vs. | : | |
| | : | **NO. 15-6516** |
| **CITY OF PHILADELPHIA,** | : | |
| **DEPARTMENT OF LICENSES** | : | |
| **AND INSPECTIONS** | : | |
| **Defendant.** | : | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant, the City of Philadelphia, by and through its undersigned counsel, hereby moves for Summary Judgment in the above captioned matter. In support thereof and pursuant to L.R.Civ.P. 7.1, Defendant relies on the accompanying Memorandum of Law.

                                              Respectfully submitted,
                                              CITY OF PHILADELPHIA LAW DEPARTMENT

                                              */s/ Benjamin R. Patchen*
                                              BENJAMIN R. PATCHEN
                                              PA Attorney ID No. 316514
                                              Assistant City Solicitor
                                              Labor and Employment Unit
                                              1515 Arch Street, 16th Floor
                                              Philadelphia, PA 19102
                                              (215) 683-5077 (phone)
                                              (215) 683-5099 (fax)
DATE: July 20, 2017                      benjamin.patchen@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARL SMITH, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| vs. | : | |
| | : | NO. 15-6516 |
| CITY OF PHILADELPHIA, | : | |
| DEPARTMENT OF LICENSES | : | |
| AND INSPECTIONS | : | |
| Defendant. | : | |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, City of Philadelphia ("Defendant"), by and through undersigned counsel, hereby submits this Memorandum of Law in support of its Motion for Summary Judgment.

**I. INTRODUCTION**

Plaintiff Carl Smith claims that Defendant engaged in religious discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, et se., and the Pennsylvania Human Relations Act, (PHRA) 43 P.S. §§ 951-63. Plaintiff cannot establish the necessary elements to prove a *prima facie* case of disparate treatment, and Defendant has proffered a legitimate nondiscriminatory reason for Plaintiff's termination. For these reasons and as set forth fully in this Memorandum, Plaintiff fails to establish a genuine issue of material fact or state a claim upon which relief can be granted for all alleged counts. As such, Defendant is entitled to Summary Judgment.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1. On August 22, 2012, Plaintiff was hired by the City of Philadelphia Department of Licenses and Inspections as a Construction Code Specialist Trainee. (Exhibit 1, Complaint ¶ 18).

2. A copy of the job description for Construction Code Specialist Trainee is attached hereto as Exhibit 2.

3. Plaintiff identifies as Catholic. (Exhibit 3, Plaintiff's Deposition "P's Dep." pages 98:5-6).

4. The Construction Code Specialist training consisted of attending classes at the Municipal Services Building and observing inspectors in the field. (Exhibit 3, P's Dep. 17:9-18:17).

5. Trainees are expected to follow an inspector and take direction. (Exhibit 3, P's Dep. 18:16-17).

6. The inspector would instruct Plaintiff for the day and then give a report to the inspector's supervisor. (Exhibit 3, P's Dep. 23:5-8).

7. Plaintiff concedes that inspectors in the field could not approve leave, impose discipline unilaterally or change his work schedule. (Exhibit 3, P's Dep. 23:9-24:21).

8. Plaintiff trained with different inspectors throughout the five districts. (Exhibit 4, Rejection From Probation Notice).

9. One of those inspectors was Kevin Szychulski ("Szychulski"), whose technical job title was Construction Code Specialist.[2] (Exhibit 3, P's Dep. 92:16-21 and P's Dep. 23:1-8).

---

[1] The facts listed in Section II of this Motion are deemed undisputed only for purposes of this Motion.
[2] Szychulski voluntarily left his job with the City of Philadelphia to accept a higher paying position with the Sprinklers Fitter Union. Szychulski Dep. 46:10-16.

4.

10. Kevin Szychulski had no supervisory authority. (Exhibit 5, Kevin Szychulski Deposition, "Szychulski Dep." pages 60:6-14).

11. Szychulski, like plaintiff, is Catholic. (Exhibit 5, Szychulski Dep. 10:1).

12. Plaintiff worked with Kevin Szychulski for approximately three days during his probationary period. (Exhibit 3, P's Dep. 86:22-24).

13. While training with Szychulski, Kevin Szychulski handed three prayer cards and told Plaintiff to pray for the souls in Purgatory. (Exhibit 1, Compl. ¶ 22).

14. Plaintiff told Szychulski that he is Catholic and prays on his own every day. (Exhibit 3, P's Dep. 88:17-19).

15. On two additional occasions, Kevin Szychulski asked Plaintiff if he had been using the prayer cards. (Exhibit 1, Compl. ¶¶ 24-25).

16. During a discussion about guns, Plaintiff asked Szychulski whether Szychulski has a priest bless the guns that he owns. Exhibit 3, P's Dep. 101:9-16.

17. John McFarlane was Plaintiff's supervisor at the West District. (Exhibit 3, P's Dep. 86:9-14).

18. Plaintiff talked to John McFarlane about receiving the prayer cards from Kevin Szychulski. (Exhibit 3, P's Dep. 58:2-7).

19. John McFarlane asked Plaintiff if he would like to file an internal complaint, and Plaintiff declined. (Exhibit 3, P's Dep. 58:2-7).

20. Plaintiff did not submit a formal complaint in writing or verbally to either Human Resources or the City's EEO unit about the alleged discrimination. (Exhibit 3, P's Dep. 57:5-10).

21. Plaintiff admits that he was able to satisfactorily perform his job duties while he was with Szychulski. (Exhibit 3, P's Dep. 91:2-11).

22. Plaintiff admits Szychulski's comments did not affect his ability to do his job at other places besides the West District. (Exhibit 3, P's Dep. 101:3-5).

23. Plaintiff never heard Kevin Szychulski speak about him negatively to any other inspector or supervisor. (Exhibit 3, P's Dep. 79:17-20).

24. On February 22, 2013, Plaintiff was rejected from employment during the probationary period. (Exhibit 4, Rejection from Probation Notice).

25. Under the City of Philadelphia Civil Service Regulations, all persons appointed from open competitive, promotional or preferred eligible lists are subject to a probationary period of six months. (Phila. Civ. Serv. Regs. Section 14.01). "At any time during the probationary period, the appointing authority, or his/her designated representative, with the approval of the Director, may discharge or demote a probationary employee, if said appointing authority, or his/her designated representative, determine that such employee is unable or unwilling to perform his/her duties satisfactorily…" (Phila. Civ. Serv. Regs. Section 14.04, attached hereto as Exhibit 6).

26. Gerard James ("James") is the Construction Services Manager. (Exhibit 7, James Deposition pages 8:11-16).

27. James also identifies as Catholic. (Exhibit 7, James Dep. 34:1-4).

28. James is the supervisor of the five district offices. (Exhibit 7, James Dep. 8:17-9:22).

29. James prepared Plaintiff's rejection notice. (Exhibit 7, James Dep. 24:12-17).

30. Plaintiff had only one conversation with Gerard James prior to his rejection from probation. (Exhibit 3, P's Dep. 120:10-21).

31. During that conversation, James told Plaintiff that he heard that Plaintiff had been discussing coworkers and that Plaintiff had left a job assignment. (Exhibit 3, P's Dep. 120:10-21).

32. Plaintiff admits that he asked the inspectors about responsibilities, professionalism and training. (Exhibit 3, P's Dep. 63:15-64:3).

33. Plaintiff admits that he left a work site and that James spoke with Plaintiff about that incident. (Exhibit 3, P's Dep. 71:19-22-72:3).

34. Plaintiff and James never spoke of religion during any conversation. (Exhibit 3, P's Dep. 121:6-17).

35. In order to make the decision to reject Plaintiff from probation, James spoke with the district supervisors and the inspectors. (Exhibit 7, James Dep. 11:19-12:21).

36. The rejection notice includes several reasons for termination. The notice reads, in pertinent part,

> "During your time as a Trainee you have had the opportunity to work in each of the department's districts. Your behavior as an L&I employee has been disruptive. You have questioned other Inspector's and the Department's integrity, responsibilities, professionalism and experience during your training through the field district offices. You have also made innuendoes, unacceptable remarks, accusations and behind the back questioning of some supervisors and inspectors. This behavior does not indicate your ability to learn and work with your co-workers and Supervisors in a supportive team environment. During your probationary period it was brought to my attention that you removed yourself from a training process to proceed on your own at a job site/ inspection area. It is important that new inspectors, especially while on probation, work under the guidance and instruction of Supervisors."

(Exhibit 4, Rejection Notice).

37. Plaintiff alleges that James was misinformed because he spoke to the wrong people. Exhibit 3, P's Dep. 67:10-17.

38. Plaintiff's contention is that Szychulski "poisoned the pool" against him and Plaintiff believes that this was done because of the incident involving the prayer cards. Exhibit 3, P's Dep. 77:11-22.

39. Plaintiff does not believe he was discriminated against on the basis of his religion in any other manner. Exhibit 3, P's Dep. 79:9-12.

40. Plaintiff never personally heard Szychulski talk poorly about Plaintiff to any other employee. Exhibit 3, P's Dep. 81:14-19.

41. Plaintiff does not know of anyone else in the same or similar position who was alleged to have similar performance or conduct problems but who was treated better than him. (Exhibit 3, P's Dep 115:15-116:8).

42. On October 9, 2013, Plaintiff filed a complaint with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. (Exhibit 1, Compl. ¶¶ 2-3).

43. Plaintiff filed the instant complaint alleging unlawful religious discrimination in violation Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, *et seq.* and the Pennsylvania Human Relations Act, (PHRA) 43 P.S. §§ 951-963 on [date]. (Exhibit 1, Compl. ¶ 1).

### III.   ARGUMENT

#### A.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *see also Lawrence v. Nat'l Westminster Bank*, 98 F.3d 61, 65 (3rd Cir. 1996). The moving party bears the initial burden of illustrating the absence of a

genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy this burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 323-25.

Once the moving party has made a proper summary judgment motion, the burden shifts to the nonmoving party. The nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As our Court of Appeals has observed, "the mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1308 (3rd Cir. 1995).

While the Court must resolve all doubts and consider the evidence in the light most favorable to the opposing party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), the non-moving party cannot escape summary judgment by introducing "a mere scintilla of evidence" in his favor. *Daniels v. School Dist. Of Philadelphia*, 776 F.3d 181, 192 (3rd Cir. 2015) (citation omitted). Additionally, bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3rd Cir. 1982). "[W]hen the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party," the moving party is entitled to summary judgment in its favor. *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 129 (3rd Cir. 1998) (citing *Matsushita*, 475 U.S. at 586). In this matter, Plaintiff cannot present facts sufficient to defeat summary judgment and his case must be dismissed.

### B.  PLAINTIFF'S RELIGIOUS DISCRIMINATION CLAIM CANNOT SUCCEED

In the instant case, Plaintiff asserts that Defendant engaged in unlawful religious discrimination in violation Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act.[3] The Third Circuit has recognized two theories on which a plaintiff may rely to establish a religious discrimination claim, "disparate treatment" and "failure to accommodate." *Wallace v. City of Phila.*, No. 06-4236, 2010 U.S. Dist. LEXIS 42437, at *21 (E.D. Pa. Apr. 26, 2010) (quoting *Abramson v. William Paterson Coll.*, 260 F.3d 265, 281 (3rd Cir. 2001)). Here, Plaintiff does not specify under which theory he is proceeding. However, because Plaintiff failed to plead or offer evidence that he requested, needed, or expected an accommodation, Defendant will address only the disparate treatment theory.

Plaintiff's religious discrimination claim must fail because he cannot establish a *prima facie* case of disparate treatment. To prove a claim under the disparate treatment theory of religious discrimination, the plaintiff must demonstrate that (1) he is a member of a protected class, (2) he was qualified and rejected for the position sought, and (3) nonmembers of the protected class were treated more favorably. *Abramson*, 260 F.3d at 282.

After the plaintiff establishes these factors, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment decision. Once the employer does so, the plaintiff must demonstrate that the proffered reason was pretextual. *Id*. In the instant matter, there is no evidence that nonmembers of Plaintiff's class were treated more favorably than Plaintiff. Moreover, Plaintiff was rejected from employment during the probationary period based on his disruptive behavior and inability to work with colleagues.

---

[3] Discrimination and retaliation claims under Title VII and the PHRA are analyzed in the same manner. *See Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3rd Cir. 2007) (discussing the similarity of Title VII and PHRA retaliation analysis); *Weston v. Pennsylvania*, 251 F.3d 420, 425 n.3 (3rd Cir. 2001) (same).

Plaintiff identifies as Catholic and, as such, is a member of a protected religious class. Plaintiff was qualified and rejected from his position as a Construction Code Specialist Trainee. However, Plaintiff has failed to adduce any evidence that similarly situated persons outside of his protected class that were treated more favorably for similar conduct.

### 1. Plaintiff Cannot Establish a *prima facie* Case of Disparate Treatment Because He Has Failed to Adduce Any Evidence That Similarly Situated Persons Outside of His Protected Class Were Treated More Favorably for Similar Conduct.

Plaintiff's religious discrimination claim must fail because there is no evidence that similarly situated persons who were not Catholic or who adhered to a more conservative form of Catholicism were treated more favorably for similar conduct. See, e.g., *Tucker v. Merck & Co.*, 2004 U.S. Dist. LEXIS 11222, No. Civ.A.03-5015, 2004 WL 1368823, at *12-13 (E.D. Pa. June 17, 2004) (concluding African-American Plaintiff alleging race discrimination could not establish *prima facie* case of discrimination where he failed to identify any similarly situated non-members of the protected class who were treated more favorably). To be similarly situated in the context of an employment discrimination claim, a comparator "must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 639 (E.D. Pa. 2004).

Not only does Plaintiff fail to establish that non-members of his protected class were treated more favorably, he has failed to mention any other employee with whom he could be compared. Plaintiff admitted that he does not know of anyone else in the same or similar position that was alleged to have similar performance or conduct problems but who was treated better than him. (Exhibit 3, P's Dep 115:15-116:8).  Absent any evidence of disparate treatment, Plaintiff's claim fails.

### 2. Should This Court Find Plaintiff Has Established a Prima Facie Case of Disparate Treatment, Plaintiff's Claim Must Fail Because Defendant Has Proffered A Legitimate Nondiscriminatory Reason For Plaintiff's Termination

Moreover, even if the Court finds that Plaintiff can establish *a prima facie* case of disparate treatment, Defendant is entitled to Summary Judgment because there was a legitimate nondiscriminatory reason for Plaintiff's termination.

Once the employer provides a legitimate and nondiscriminatory basis for terminating the employee, the plaintiff must demonstrate that the proffered reason was pretextual. *Abramson*, 260 F.3d at 282. To accomplish this, the plaintiff is required to "point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. It is not enough for a plaintiff to show that the employer's decision was wrong or mistaken, the issue is whether the employer acted with discriminatory animus. *Valdes v. Union City Bd. of Educ.*, 2006 WL 2051665, at 3, 186 F. App'x 319, 323 (3rd Cir. 2006). *See Bazargani v. Haverford State Hosp.*, 90 F. Supp. 2d 643 (E.D. Pa. 2000) (Plaintiff failed to raise genuine issue of fact that defendant's reason for terminating her employment was pretext for discrimination or retaliation).

A defendant can satisfy its burden by presenting evidence sufficient to conclude that there was a nondiscriminatory reason for the plaintiff's discharge. *Fuentes*, F.3d at 763. The Third Circuit has described this burden as "relatively light," as the defendant need not prove that its reason actually motivated its decision. *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 S. Ct. 1089 (1981)).

In the instant matter, Defendant has satisfied its burden by presenting evidence that there

was legitimate nondiscriminatory reason for the termination. On August 22, 2012, Plaintiff was hired by the City of Philadelphia Department of Licenses and Inspections as a Construction Code Specialist Trainee. (Exhibit 1, Compl. ¶18). The Construction Code Specialist training consisted of attending classes at the Municipal Services Building and observing inspectors in the field. (Exhibit 3, P's Dep., pages 17:9-18:17). On February 22, 2013, Plaintiff was rejected from employment during the probationary period. (Exhibit 4, Rejection Notice).

Under the City of Philadelphia Civil Service Regulations, employees, like Plaintiff, who are appointed from open competitive, promotional or preferred eligible lists, are subject to a probationary period of six months. (Phila. Civ. Serv. Regs. Section 14.01). The regulation reads, "[a]t any time during the probationary period, the appointing authority, or his/her designated representative, with the approval of the Director, may discharge or demote a probationary employee, if said appointing authority, or his/her designated representative, determine that such employee is unable or unwilling to perform his/her duties satisfactorily…" (Phila. Civ. Serv. Regs. Section 14.04). Exhibit 6, Civil Service Regulation 14.

Plaintiff testified that the trainees were expected to follow the inspector and take direction. (Exhibit 3, P's Dep. 18:16-17). The inspector would instruct him for the day and then report to their supervisor. (Exhibit 3, P's Dep. 23:5-8). The Department concluded that Plaintiff's behavior and interactions with the inspectors was "disruptive" and non-compliant. Additionally, Plaintiff was disrespectful and dismissive of his supervisors and to the department as a whole. (Exhibit 4, Rejection Notice). As such, the Department decided his actions were not conducive to permanent employment.

Gerard James, the Construction Services Manager, who like Plaintiff is Catholic,

prepared the rejection notice that detailed the reasons why Plaintiff was terminated. (Exhibit 7, James Dep. 24:12-17). The notice reads, in pertinent part,

> "During your time as a Trainee you have had the opportunity to work in each of the department's districts. Your behavior as an L&I employee has been disruptive. You have questioned other Inspector's and the Department's integrity, responsibilities, professionalism and experience during your training through the field district offices. You have also made innuendoes, unacceptable remarks, accusations and behind the back questioning of some supervisors and inspectors. This behavior does not indicate your ability to learn and work with your co-workers and Supervisors in a supportive team environment. During your probationary period it was brought to my attention that you removed yourself from a training process to proceed on your own at a job site/ inspection area. It is important that new inspectors, especially while on probation, work under the guidance and instruction of Supervisors."

(Exhibit 4, Rejection Notice).

Plaintiff trained with different inspectors throughout the five districts. (Rejection Notice). Plaintiff's claim appears to hinge on a three-day period that he spent under Kevin Szychulski. Mr. Szychulski worked as a Construction Code Specialist and he had no supervisory authority. (Exhibit 3, P's Dep. 92:16-21 and Exhibit 5, Szychulski Dep. 60:6-14). At one point, Plaintiff claims that he was handed three prayer cards and asked to pray for the souls in Purgatory by an inspector, Kevin Szychulski, who also identifies as Catholic. (Exhibit 1, Compl. ¶ 22 and Exhibit 5, Szychulski Deposition pages 9:24-10:3). Even if Plaintiff's version of events is accurate, his claims still fails as a matter of law. There is simply no evidence that Plaintiff was terminated from his employment because of his religion.

Gerard James, the decision-maker, and Plaintiff never discussed religion. (Exhibit 3, P's Dep 121:6-17). However, they spoke about some of the assertions in the rejection notice. During that conversation, Mr. James told Plaintiff that he was made aware that Plaintiff had been discussing co-workers and that Plaintiff left a job assignment. (Exhibit 3, P's Dep 120:10-21). Plaintiff admitted that he left a work site to use the restroom. (Exhibit 3, P's Dep 71:19-22). Furthermore, Plaintiff conceded that he questioned the inspectors about responsibilities,

14.

professionalism and training. (Exhibit 3, P's Dep 63:15:-64:3). According to Mr. James, this behavior hindered Plaintiff's ability to learn and to work with his colleagues and supervisors in a supportive team environment. This skill was crucial to the daily operation of the Department and to the safety of employees.

The decision to reject Plaintiff during his probationary period was based solely on his job performance and his interactions with other employees. Plaintiff may dispute these assessments but there is simply no evidence that they were based on religion. To reiterate, Mr. Szychulski did not have any supervisory authority and did not make or influence the decision to reject him during probation. Even if the Plaintiff disagrees with the assertions listed in the rejection notice, the Court identified in *Valdes*, it is not enough for a plaintiff to show that the employer's decision was wrong or mistaken (Defendant denies that they were). *Valdes*, 2006 WL 2051665 at 3, 186 F. App'x at 323. The issue is whether the employer acted with discriminatory animus. *Id*. Plaintiff has failed to demonstrate that the assertions described in his rejection notice were a pretext for discrimination. Further, all of the employees involved in the decision to terminate Plaintiff's employment practiced the same religion as Plaintiff.

## IV.    CONCLUSION

As there is no genuine issue of material fact, Defendant is entitled to Summary Judgment. Plaintiff cannot establish the necessary elements to prove a *prima facie* case of disparate treatment and Defendant has proffered a legitimate nondiscriminatory reason for Plaintiff's termination.

## CERTIFICATE OF SERVICE

    I certify that on this date, the foregoing Defendant's Motion For Summary Judgment was electronically filed, and is available for viewing and downloading via the Court's ECF system. The ECF System's electronic service of the Notice of Electronic Case Filing constitutes service on all parties who have consented to electronic service.

                                                               */s/ Benjamin R. Patchen*
                                                                Benjamin R. Patchen
                                                                PA Attorney ID No. 316514
                                                                Assistant City Solicitor
                                                                Labor and Employment unit
                                                                1515 Arch Street, 16th Floor
                                                                Philadelphia, PA 19102
Dated: <u>July 20, 2017</u>                   (215) 683-5077