## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARL SMITH** | | |
| *Plaintiff,* | | NO. 15-6516 |
| **vs.** | | CIVIL ACTION |
| **CITY OF PHILADELPHIA** | | |
| *Defendant.* | | |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMMARY JUDGMENT

Plaintiff, by and through counsel, hereby submits the following Response in Opposition to Defendant's Motion for Summary Judgment:

### I.    INTRODUCTION

This is a classic case of discrimination implicating a "cat's paw" theory. The phrase "cat's paw" is adapted from Jean de La Fontaine's *The Monkey and the Cat*. It is a story about a monkey and a cat wherein the monkey tricks a cat into stealing chestnuts from a fire. While the cat's paws are burning in the fire, the monkey makes away with the chestnuts. In the employment discrimination context, it is a situation where the employee with discriminatory motives influences the decision maker to take an adverse employment action against the employee.  In this case, Plaintiff was terminated because Kevin Szychulski spread false information about him due to efforts by the Plaintiff to repel his religious advances in the workplace.

As the Court will gather from the record, there are disputes of material fact in this case sufficient that Defendant's motion should be denied. For example, Defendant's responses to interrogatories indicate that Plaintiff was terminated because of "performance" issues. Yet, deposition testimony confirms that Plaintiff was terminated because of his dispute with Szychulski.  Plaintiff, a Catholic, was forced to push away another Catholic that admittedly 1.) distributed prayer cards at work, 2.) asked employees to attend mass and confession with him, 3.) engaged in confrontational disputes at work over religious issues and 4.) generally did not treat those well who failed to accept his brand of "extreme" Catholicism. Because Plaintiff did not accept Szychulski's staunch view of the religion, a reasonable jury could conclude that Szychulski poisoned the well by labeling Plaintiff as a "mole" or "rat" within Department of Licensing and Inspections leading to his (*inevitable*) termination following the probation period.

For the reasons set forth below, Defendant's motion should be denied as there are disputes of material fact in this case to be resolved by a trial by jury.

## II.    STATEMENT OF FACTS AND COUNTER-STATEMENT OF MATERIAL FACTS

Plaintiff hereby incorporates by reference his Answer to Defendant's Statement of Undisputed Material Facts and Counter-Statement of Material Facts Precluding the Entry of Summary Judgment ("PSOF").

## III.    ARGUMENT

Plaintiff respectfully submits that summary judgment is inappropriate as there are disputes of material fact remaining for trial on his claims in this case.

### a.  Summary Judgment Standard of Review

Federal Rule of Civil Procedure 56(c) states unequivocally that entry of summary judgment is appropriate only in cases " . . . where there is no genuine issue of material fact for the jury to decide."  *See* Coolspring Stone Supply v. American States Life Ins. Co., 10 F.3d 144, 148 (3rd Cir. 1993).  Summary judgment may be granted only when there is no dispute as to any issue of material fact and where the moving party is entitled to judgment as a matter of law.  In response to a motion for summary judgment, the nonmoving party must demonstrate the existence of a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986).  The burden always remains on the moving party, however (herein, the Defendant), to show that a rational trier of fact could not find for the non-moving party and that there is thus no genuine issue for trial.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  Defendant simply cannot meet the foregoing burden in the instant case.

In ruling on a motion for summary judgment, the Court must accept and believe the evidence of the non-moving party as true, and must not weigh or consider the credibility of witnesses.  Anderson, 477 U.S. at 248-52.  The non-moving party's evidence must be believed as true at this stage, and any and all doubts must be resolved in that party's favor.  Eastman Kodak Co. v. Image Technological Services, Inc., 504 U.S. 451, 456 (1992).  Where the non-moving party's evidence contradicts the movant's evidence, then the non-movant's evidence must be accepted and taken as true. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3rd Cir. 1992), cert. den'd, 507 U.S. 912 (1993).

### b. The Cat's Paw Theory of Discrimination

The "subordinate bias" theory of discrimination has been recognized by each of the federal circuit courts that have considered it. EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 476 (10th Cir. 2006), *cert. dismissed* 127 S. Ct. 1931, 167 L. Ed. 2d 583 (2007).  The Third Circuit Court of Appeals recognizes this theory as well.  *See, e.g.,* Abramson v. William Patterson College of New Jersey, 260 F.3d 265 (3d Cir. 2001).  The Abramson Court noted that:

> Under our case law, it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate. See Abrams v. Lightolier Inc., 50 F.3d 1204, 1214 (3d Cir. 1995) (stating in ADEA case that if plaintiff's supervisor participated in decision to terminate him, even though president of company formally terminated him, evidence of supervisor's age-related animus would be relevant in determining if discriminatory motive at play); see also Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir. 2000)("If the employee can demonstrate that others had influence or leverage over the official decisionmaker . . . it is proper to impute their discriminatory attitudes to the formal decisionmaker."); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000) (stating that "discriminatory comments . . . made by . . . those in a position to influence the decisionmaker" can be evidence of pretext); Griffin v. Washington Convention Ctr., 330 U.S. App. D.C. 81, 142 F.3d 1308, 1312 (D.C. Cir. 1998) ("Evidence of a subordinate's bias is relevant where the ultimate decision maker is not insulated from the subordinate's influence."). As we noted in Roebuck v. Drexel University, 852 F.2d 715, 727 (3d Cir. 1988), "it is plainly permissible for a jury to conclude that an evaluation at any level, if based on discrimination, influenced the decisionmaking process and thus allowed discrimination to infect the ultimate decision."

Abramson, 260 F.3d at 286.

One district court has noted that the "subordinate bias" theory (also known as the "cat's paw" theory) has been adopted in some form by every federal circuit court of appeals that has considered it, and that, under the theory,   " . . . an employer may be held liable for a subordinate's prejudice *even if the decisionmaker lacked discriminatory intent."* Elston v. UPMC-Presbyterian Shadyside, 2007 U.S. Dist. LEXIS 78531, *14-15 (W.D. Pa. October 23,

4

2007) (***emphasis added***).  In <u>Dey v. Colt Constr. & Devp. Co.</u>, 28 F.3d 1446 (7th Cir. 1994) the

Seventh Circuit stated that summary judgment would not be proper "where the plaintiff can show

that an employee with discriminatory animus provided factual information *or other input* that

may have affected the adverse employment action." <u>Id</u>. at 1459.  *Plaintiff can do so here.*

### c.  The Prima Facie Case for Religious Discrimination[1]

Defendant has presented a much more rigid view of what should be a flexible standard

for a *prima facie* case. In order to establish a *prima facie* case in actions where the plaintiff

claims that he was discriminated against because he did not share certain religious beliefs held

by his supervisors, a plaintiff must show (1) that he was subjected to some adverse employment

action; (2) that, at the time the employment action was taken, the employee's job performance

was satisfactory; and (3) some additional evidence to support the inference that the employment

actions were taken because of a discriminatory motive based upon the employee's failure to hold

or follow his or her employer's religious beliefs. <u>Shapolia v. Los Alamos Nat'l Lab.</u>, 992 F.2d

1033, 1038 (10th Cir. 1993). The proof necessary to establish a *prima facie* case is not onerous.

<u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

Here, Plaintiff satisfies all three prongs of this *prima facie* case. Plaintiff unquestionably

suffered an adverse employment action insofar as he was terminated. Defendant does not

challenge that contention at all. Moreover, Defendant concedes that Plaintiff was qualified for

the position.

There is a dispute of material fact as to 1.) whether Plaintiff's job performance was

satisfactory and 2.) whether there is additional evidence to support an inference that Plaintiff's

---

[1] For purposes of this motion, Title VII and the PHRA should be construed coextensively.

termination was because of discriminatory motive on the part of Szychulski to cost Plaintiff his job.

First, Defendant argues that Plaintiff was terminated because of his allegedly "disruptive behavior and inability to work with colleagues." Yet there is no genuine support in the record for this contention at all. Plaintiff testified that he did not question anybody's integrity. PSOF at ¶32. He did, however, ask normal questions. Id. There was one occurrence where Defendant claimed Plaintiff left a job site, but Plaintiff testified he merely left for two minutes to use the restroom. Id. at ¶33. The supervisors that actually monitored Plaintiff's performance generally had positive comments about him, including McFarlane and Cocco. Id. at ¶86, ¶100.

Second, there is sufficient evidence in the record to support an inference of discrimination. It is undisputed in this case that Plaintiff made complaints about Szychulski's overly religious behavior. Id. at ¶18-¶20. When Brett Martin was asked to explain the performance issues relative to Plaintiff, he testified as follows based upon his conversations with Gerald James: "My understanding was the fact that there was an event with Mr. Szychulski and that is had something to with a **religious issue**. I don't have the details." Id. at ¶93.Moreover, Martin testified "It was a very generalized statement that there was an event that happened between Mr. Smith and Mr. Szychulski and it had to do with religion. That's pretty much where it stayed." Id. at ¶95.

For his part, it is very clear from the record that Szychulski attempted to press his religious beliefs on all of his colleagues. During the course of this litigation, he admitted that he got into religious disagreements with people in his office and brought prayer cards into work to hand them out to "other Catholics." Id. at ¶48-¶49. He also admitted, critically, that he made negative comments about Plaintiff's performance to at least McFarlane. Id. at ¶56, ¶59. He also

admitted that he probably told other colleagues that Plaintiff was a "mole." Id. at ¶62. He testified that he had an understanding that what he was saying could affect a person's ability to remain employed. Id. at ¶65. Even Szychulski's own supervisor characterized him as a religious "zealot." Id. at ¶83.

Comparator evidence is not the only manner in which an inference of discrimination may be drawn for purposes of establishing a *prima facie* case and establishing pretext. In this case, there are shifting and inconsistent reasons for the Plaintiff's termination coupled with compelling circumstantial evidence that the termination was motivated by a discriminatory animus on the part of Szychulski to ensure Plaintiff lost his position. *See* EEOC v. Ethan Allen, 44 F.3d 116, 120 (2d Cir.1994) ("From such discrepancies a reasonable juror could infer that the explanations given by [an employer] were pretextual, developed over time to counter the evidence suggesting [discrimination]"); Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1194 (11th Cir. 2004) (inconsistent rationale for termination allowed jury to question credibility and once credibility is damaged, a rational jury could infer discrimination); Kobrin v. Univ. of Minnesota, 34 F.3d 698, 703 (8th Cir. 1994) ("Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext"); Cicero v. Borg–Warner Auto., Inc., 280 F.3d 579, 592 (6th Cir.2002) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext"); Siraj v. Hermitage in N. VA, 51 F. App'x. 102, 111 (4th Cir. 2002) (*citing to* EEOC v. Sears, 243 F.3d 846, 852-53 (4th Cir.2001) (employer's shifting reasons for adverse employment action is, in and of itself, probative of pretext)).

On this record, Plaintiff has established an inference of discrimination even without a comparator. For these reasons, this Court should find that he has established a *prima facie* case. [2]

### d. A Reasonable Jury Could Conclude that Plaintiff's Termination was Pretextual

As the Third Circuit has noted:

> Briefly summarized, the McDonnell Douglas analysis proceeds in three stages. First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [action in question]. Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Jones v. School District of Philadelphia, 198 F.3d 403, 410 (3d. Cir. 1999).

A plaintiff who has made out a *prima facie* case (as Plaintiff has here) may defeat a motion for summary judgment by either (i) discrediting the proffered reasons for the employer's decisions, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.  Thus, if the plaintiff has pointed to evidence sufficiently to discredit the Defendants' proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her *prima facie* case.  Fuentes v. Perskie, 32 F.3d 759, 764 (3rd Cir. 1994). Once a plaintiff has set forth a *prima facie* case of discrimination, defendant must produce a legitimate, non-discriminatory reason for the adverse employment action.  *See* Raytheon Co. v. Hernandez, 540 U.S. 44, 51 (2003).

---

[2] While ancillary, Plaintiff also notes that former defense counsel's conduct in this case also warrants the finding of an inference and pretext where it was apparent he attempted to obstruct fair examination of witnesses and even coached them in an egregious manner at times. *See generally* Vnuk v. Berwick Hosp. Co., No. 3:14-CV-01432, 2016 U.S. Dist. LEXIS 25693 (M.D. Pa. Mar. 2, 2016); Fed.R.Civ.P. 37.

Where the weaknesses, inconsistencies, incoherencies, or contradictions in an employer's proffered reason for [the adverse employment action] are such that a reasonable fact finder could rationally find them "unworthy of credence," they may be deemed pretextual. *See* Marra v. Phila. Hous. Auth., 497 F.3d 286 (3d Cir. 2007)." The plaintiff must show not merely that the employer's proffered reason was wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Atkinson v. Lafayette College, 460 F.3d 447, 454 (3d Cir. 2006) (citation omitted).

Pretext can be demonstrated in a variety of ways, including but not limited to differential treatment of similarly situated employees and procedural irregularities. Differential treatment of similarly-situated employees is particularly relevant where the defendant has proffered a legitimate non-discriminatory reason for the adverse employment action. Trujillo v. PacifiCorp, 524 F.3d 1149 (10th Cir. 2008) (citation omitted).

In most employment discrimination cases, there is no "eyewitness" testimony as to the employer's mental processes. U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716, 103 S. Ct. 1478 (1983). Where "smoking gun" evidence of discrimination is lacking, the proper inquiry is "whether evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge reasonably could support an inference that the employer did not act for non-discriminatory reasons, not whether the evidence necessarily leads to [the] conclusion that the employer did act for discriminatory reasons." Josey v. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993) (citations omitted).

At the summary judgment stage, Plaintiff need not establish pretext by a preponderance of evidence, but rather must simply point to sufficient evidence that raises a genuine issue of

9

material fact.  Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1067 (3d Cir. 1996)

(*en banc*)).

In contrast, the burden *always* remains with the moving party to show that there is no

issue of material fact. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996)

(citations omitted). Moreover, an inference of discrimination can arise from various facts, and

not just from comparator information.  *See* Jones, *supra.*

Much, if not all, of the evidence Plaintiff relies upon to make out a *prima facie* case

overlaps with that which is relied upon to establish pretext. *See* Doe v. C.A.R.S Protection Plus,

Inc., 527 F.3d 358, 370 (3d.Cir. 2008) ("Lastly, it is important to remember that the *prima facie*

case and pretext inquiries often overlap. As our jurisprudence recognizes, evidence supporting

the *prima facie* case is often helpful in the pretext stage, and nothing about the McDonnell

Douglas formula requires us to ration the evidence between one stage or the other.")

Here, a reasonable jury could conclude that Plaintiff was pretextually terminated because

of a religious animus on the part of Szychulski. Any reasonable juror could understand and

conclude that Szychulski's actions were designed to get the Plaintiff fired from his position.

Plaintiff put it best during his deposition when he explained that Szychulski "poisoned the well."

PSOF at ¶38. It is also apparent that there are substantial inconsistencies in the reasons for

Plaintiff's termination. Again, some of the supervisors (McFarlane and Cocco) testified that they

did not see any issues with Plaintiff's performance. Id. at ¶86, ¶100. But, James testified

everything he placed in the "Rejection Notice" was information that he obtained from other

district supervisors and inspectors. Id. at ¶70.

10

Moreover, as explained above, there are substantial inconsistences between the stated reasons for Plaintiff's termination and Martin's testimony. Id at ¶91-¶98, ¶106. Martin made it very clear that the religious issues between Plaintiff and Szychulski played some role in the termination. Id. Because this is a dispute of material fact and a reasonable jury could conclude that Szychulski's actions may have affected the adverse employment action, summary judgment is not appropriate or warranted in this case. *See* Dey, 28 F.3d at 1459. Even McFarlane confirmed during his deposition that somebody in Szychulski's position could influence his opinion about a trainee such as the Plaintiff. Id. at ¶89. And it is undisputable that Szychulski started the "rumor mill" characterizing Plaintiff as a "mole." Id. at ¶104.

Plaintiff also notes that there are fairly substantial inconsistencies (in the context of this case) between Szychulski's testimony and that of his supervisor. For example, McFarlane testified that Szychulski would ask him to attend mass (which Szychulski denies). Id. at ¶84. And despite Szychulski's attempt to spin the issue, McFarlane testified there were at least three or four times he had to tell Szychulski to stop talking about religion in the office. Id. at ¶85. He even thought it was a violation of a rule or regulation. Id. John Lech testified it was very obvious and open that he disliked the Plaintiff. Id. ¶102.

Other witnesses offered testimony that undermines and casts doubt on Defendant's legitimate non-discriminatory reasons. For example, Jagaczewski testified that Plaintiff was the only person who did not get through the probation period during the relevant timeframe. Id. at ¶76. Glen Guadalupe, an inspector, testified that the religious disputes with Szychulski played a role when it came time to recommend or not recommend Plaintiff for hire at L&I. Id. at ¶73. He also testified that he did not believe there was anything tangible to base a criticism of Plaintiff's performance on during the relevant time period. Id. at ¶75.

For these reasons, there is ample evidence in the record for this Court to include that there disputes of material fact in dispute for a jury to resolve at trial. Accordingly, Defendant's motion should be denied.

## IV.    **CONCLUSION**

For the reasons set forth above, Defendant's motion should be denied.

Respectfully submitted,

KOLMAN ELY, P.C.

_____ */s/* W. Charles Sipio
Timothy M. Kolman, Esquire
Wayne A. Ely, Esquire
W. Charles Sipio, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138

*Attorneys for Plaintiff*

Dated: August 17, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record via this Court's CM/ECF system.

*/s/* W. Charles Sipio

W. Charles Sipio, Esquire

Dated:  August 17, 2017